625 P.2d 1240

**William P. BAKEL, Plaintiff-Appellant,**

v.

**BERNALILLO COUNTY ASSESSOR,
Defendant-Appellee.**

**No. 4296.**

Court of Appeals of New Mexico.

Dec. 4, 1980.

William P. Bakel, pro se.

Paul Kaiser, Property Tax Div., Santa Fe, for defendant-appellee.

### OPINION

ANDREWS, Judge.

In a protest before the Bernalillo County Tax Protest Board, Appellant, William P. Bakel, sought to protest his 1979 tax valuation. The valuation, $69,348.00, was placed on the property in 1976. Appellant argues that the 1976 purchase price of $67,500.00 which included retirement of a second mortgage, a sewer lien of $382.01, and the purchase of chattel valued at over $1,000.00, demonstrates that the assessment was patently incorrect. He argues that the Board erred in applying the comparable sales method of determining market value. He concludes that the correct assessment should have been the amount of the 1975 valuation, ($49,827.00) plus a ten percent increase, or $54,809.00. The Board responds that appellant presented no evidence of any comparable sales showing a lesser value, and that taxpayer's evidence deals with values in 1976—not the year relevant to the protest, 1979.

This Court is thus asked to determine at what point the Board has to consider evidence which is not comparable sales data.

Under § 7-38-6, N.M.S.A. (1978 Comp.) a valuation established by the County Assessor is presumed to be correct, and the Assessor's valuation is sufficient evi-

dence where it is uncontradicted. *Peterson Properties, Del Rio Plaza Shopping Center v. Valencia County Valuation Properties Bd.*, 89 N.M. 239, 549 P.2d 1074 (Ct.App. 1976). However, this presumption is rebuttable, *In re Kinscherff*, 89 N.M. 669, 556 P.2d 335 (Ct.App.1976), *cert. denied*, 90 N.M. 8, 558 P.2d 620 (1976), and once it is rebutted, the burden shifts to the County Assessor to show correct valuation. *San Pedro So. Group v. Bernalillo County Valuation Protest Bd.*, 89 N.M. 784, 558 P.2d 53 (Ct.App.1976).

In *Kinscherff*, the court noted:

> The usual factors which are considered in ascertaining the fair market value of any given tract of land are its size, shape, location, topography, assessability to roads, availability of public utilities, and comparable sales. *In a given instance, one factor may far outweigh all the rest in importance.* (Emphasis added.)

*Id.* 89 N.M. at 673, 556 P.2d 335.

In that case, no evidence of comparable value or similar properties was actually adduced. The only testimony was that of one witness who stated that the land in question was worth only $18.00 per acre because a lack of access made it unsuitable for anything but grazing. In addition, there was no showing that comparable sales data was unavailable. In view of these facts the matter was remanded to the Board so that it could consider factors other than comparable sales.

One aspect of the comparative sales method is that any factors which effect the property as to make it unique must be considered. This is not another kind of valuation technique; it is a basic part of the market value approach of comparative sales. As this Court has stated:

> In reviewing sales of other properties, "to compare" means to examine the characters or qualities of one or more properties.... [t]hus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.

*Peterson Properties, Del Rio Plaza Shopping Center v. Valencia County Valuation Protests Bd., supra.*

We arrive then, at an apparent contradiction. Section 7–36–15(B), N.M.S.A. (1978 Comp.) provides that:

> [u]nless a method or methods of valuation are authorized [in other sections] ... the value of property for property taxation purposes shall be its market value as determined by sales of comparable property.

Yet, as noted above, according to *Kinscherff*, comparable sales is but one factor of many which can be considered. We believe the resolution of this seeming paradox lies in the balance of § 7–36–15 which states:

> ... if that method [comparable sales] cannot be used due to the lack of comparable sales data for the property being valued, then its value shall be determined by using an income method or cost methods of valuation.

In accordance with this provision, *Kinscherff* holds that there may be factors such as size, shape or location which may affect the market value of a given lot and distinguish it from others that form the basis of comparable sales. In determining the fair market value of a given house in a subdivision where it does not differ significantly from any of the other houses, one need not look beyond the sale price of other houses in the subdivision.

A synthesis of the statute and its surrounding case law, then, reveals the correct rule to be as follows: If reliable comparable sales data can be reasonably obtained, the comparative sales method must be used—this means that the taxpayer has the burden to demonstrate either that comparative sales data is not reasonably obtainable, or that it would be unreliable to demonstrate a lack of reliability, that other property is not actually "comparable", the taxpayer might show that the location, access, utilities, or other such factors distinguish his property from other such properties. *In re Kinscherff, supra.* If the taxpayer is able to show that the comparative sales

method should not be utilized, then the income method or cost method must be used.

■ The sole basis of the taxpayer's appeal here is "that the 1976 property evaluation should have been in light of the 1974 purchase price. A reasonable evaluation is the 1975 evaluation plus a nominal increase of ten percent." Such is not the law. Section 7–38–7, N.M.S.A., 1978 Comp. provides in pertinent part:

All property subject to valuation for property taxation purposes shall be valued as of January 1 of each tax year

. . . .

And, as we stated in *Kinscherff*, what the fair market value of a tract may have been in the past or speculation as to what it might be in the future cannot serve as the basis for valuation.

■ There is nothing in the record to indicate that there were any unique factors about the subject property which would affect its market value. The taxpayer's evidence consisted of explaining the basis of the purchase price. Since the burden of proof as to the correct assessment methodology is on the taxpayer, and our examination of the record shows that this taxpayer offered no evidence to show that the comparative sales method would be unreliable in this situation due to a lack of "comparable" properties, the correct assessment method was comparable sales.

Because the taxpayer has failed to meet the burden of proof required to overcome the statutory presumption that the Assessor's valuation is correct, the decision of the Board is affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

WALTERS, J., specially concurs.

WALTERS, Judge (specially concurring.)

I concur in the result. I do not believe there is a contradiction between *Kinscherff* and § 7–36–15(B), but merely that the inclusion of "comparable sales" in the quotation from *Kinscherff* was inadvertent. As the majority points out, all of the other factors enumerated in the *Kinscherff* quote are but matters to be considered in establishing "comparable" sales.

Market data approach to evaluation, which employs the comparable sales analysis, is required by statute for tax valuation appraisals, if that data is available. Section 7–36–15, N.M.S.A. 1978. Thus, the assessor's method of evaluation was correct. *Four Hills Country Club v. Bernalillo County Assessor*, 94 N.M. 709, 616 P.2d 422, (Ct.App.1979), *cert. quashed* July 29, 1980. Appellant presented no evidence of lesser comparable sales data, nor did he overcome by any evidence the presumption of § 7–38–6, N.M.S.A. 1978, that the assessor's values are correct. *See Peterson Properties v. Valencia County Valuation Protest Board*, 89 N.M. 239, 559 P.2d 1078 (Ct.App.1976).